THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Pearl C. Bryant,       
Appellant,
 
 
 

v.

 
 
 
William M. Conner,       
Respondent.
 
 
 

Appeal From Kershaw County
J. Ernest Kinard, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-633
Submitted October 1, 2004  Filed December 
 15, 2004

AFFIRMED

 
 
 
Edward C. Boggs and William Walker, Jr., both of Lexington, for Appellant.
Jonathan M. Robinson and J. Kennedy DuBose, Jr., both of Camden, for Respondent.
 
 
 

PER CURIAM:  Pearl C. 
 Bryant sued William M. Conner following an automobile accident in which Bryant 
 allegedly suffered injuries.  The jury found in favor of Connor.  Bryant appeals 
 arguing the trial judge erred in permitting Conners biomechanical expert to 
 testify on medical causation and by failing to disqualify a juror.  We affirm.
FACTS
This accident occurred while Bryant was 
 attempting a left turn into the Lexington Post Office.  The cause of the accident 
 was disputed at trial.  Bryant testified that she had come to a complete stop 
 before turning when Conner hit her full force from behind.  Conner testified 
 that he was either stopped or in the process of stopping when Bryants car cut 
 over in front of his car.  Conner stated that the front of his car caught the 
 back of Bryants car causing a very slight impact.  
Immediately following the accident, Bryant 
 requested an ambulance because she claimed her heart was beating rapidly and 
 she was concerned about her history of heart problems.  Bryant also testified 
 that she had excruciating pain in her neck, shoulder, and back following the 
 accident.  An ambulance transported Bryant to the hospital where her cardiologist, 
 Dr. Saunders, examined her.  Dr. Saunders performed x-rays on Bryants back 
 and prescribed medication for muscle spasms.  Bryants back pain persisted over 
 the next several months, and Dr. Saunders referred her to an orthopedist.  The 
 orthopedist treated Bryant for approximately a month and a half before obtaining 
 her MRI results indicating she suffered from a sequestered disk.  Upon further 
 examination, an orthopedic surgeon diagnosed Bryant with a slippage of the vertebra 
 and a herniated disk.  After a course of steroid treatments, the orthopedic 
 surgeon performed two surgeries on Bryants back to correct the slippage of 
 her vertebra.  
During the course 
 of the trial, over Bryants objection, Conner presented a videotaped deposition 
 of Dr. Robert Cargill, a biomechanical engineer.  Dr. Cargill testified that 
 based on his analysis of the forces involved in the accident, no biomechanical 
 mechanism in the collision could have caused Bryants back injury.  
Also, during the trial and just after 
 Conners testimony, a juror notified the trial judge that although she did not 
 know Conner personally, she realized that Conners stepdaughter and her children 
 were good friends.  The trial judge asked the juror whether she could be fair 
 and impartial.  The juror responded, I feel like I can be fair.  The judge 
 decided not to set aside the juror.  Before the jury received the case for deliberation, 
 Bryants counsel requested the trial judge reconsider his decision not to set 
 aside the juror, stating that [the juror] was obviously very emotional, very 
 upset, I believe she was crying and very uncomfortable, at least on the appearance, 
 from an appearance standpoint, about her continuing role as a juror in this 
 case and her ability to be impartial.  The judge recalled the juror and again 
 asked if she felt she could be fair and impartial.  The juror responded, I 
 feel like I could be fair and impartial, but if somebody feels I cant be, then 
 ---.  The trial judge declined to disqualify the juror over the objection of 
 Bryants counsel.  
LAW/ANALYSIS
 I.                 
Admissibility of Biomechanical Experts Testimony 
 
On appeal, Bryant does not argue 
 that the trial judge erred in permitting Conners expert to testify as an expert 
 in biomechanical engineering. [1]   Rather, Bryant argues that the judge improperly permitted 
 the expert to testify on medical causation, which is outside the scope of his 
 expertise.  
The qualification of a witness as 
 an expert and the admissibility of expert testimony are matters left to the 
 sound discretion of the trial judge, whose decision will not be reversed on 
 appeal absent an abuse of discretion and prejudice to the opposing party.  See 
 Crawford v. Henderson, 356 S.C. 389, 404, 589 S.E.2d 204, 212 (Ct. 
 App. 2003); Nelson v. Taylor, 347 S.C. 210, 214, 553 S.E.2d 488, 490 
 (Ct. App. 2001).  An abuse of discretion arises from an error of law or a factual 
 conclusion that is without evidentiary support.  Lee v. Suess,
318 S.C. 283, 285, 457 S.E.2d 344, 345 (1995) (citation omitted).  
 Permitting an expert witness to testify beyond the scope of his or her expertise 
 can constitute reversible error.  Pirayesh v. Pirayesh,  359 S.C. 
 284, 298, 596 S.E.2d 505, 513 (Ct. App. 2004). 
Conner presented the deposition testimony 
 of Dr. Cargill to the jury as an expert in the field of accident reconstruction 
 and biomechanical engineering.  Bryant objected, arguing Dr. Cargill testified 
 about medical causation within his deposition, which was outside the scope of 
 his expertise. The judge stated that [h]e will not be qualified to give any 
 opinions medically, but noted that: [h]is opinions that they can accept have 
 to be within his field of expertise.  Thats all.  But you cant keep him from 
 saying other things.  All I can do is give instructions to the jury.  Bryant 
 consented to the jury instruction stating: In a perfect world you would keep 
 him from saying that, but it is not a perfect world and I understand that.  
 Bryant made no further objection and Dr. Cargills videotaped deposition was 
 played for the jury.  
Dr. Cargill 
 testified to the relative changes in velocity of Bryants vehicle and the impact 
 this would have had on Bryants body, including the load on her back.  This 
 testimony is consistent with the courts definition of biomechanics.  In addition, 
 Dr. Cargill testified:

Then I compared the forces, 
 again, that I calculated or established for her lower back in this accident 
 and compared those to everyday forces in the low back.  And my conclusion was 
 that there was no biomechanical mechanism in this - - in this collision to produce 
 the sequestered disk pathology that she was diagnosed with in September of 96. 

Dr. Cargill further concluded 
 that this accident was a very minor collision and that the change in velocity 
 of the vehicles at the time of the collision was very small, at most three miles 
 per hour.  Dr. Cargill performed a crash test using a change in velocity of 
 3.5 miles per hour and determined the weight load exerted on the test dummys 
 spine to be eighty-five pounds.  He opined that the load exerted in every day 
 activities such as bending over, lifting a trash can, or running involve heavier 
 spine loads than that exerted in the crash test.  
In charging the jury on expert testimony, the trial judge 
 stated, to the extent that an expert offers an opinion outside his or her field 
 of expertise, you are not bound to accept it.  No objection was made to this 
 jury charge.  Generally, a curative instruction, such as the one given in this 
 case, is deemed to have cured any alleged error.  See State v. Kelsey, 
 331 S.C. 50, 70, 502 S.E.2d 63, 73 (1998) (explaining that instruction to disregard 
 inadmissible evidence will usually cure any error in its admission); State 
 v. George, 323 S.C. 496, 510, 476 S.E.2d 903, 911-12 (1996) (stating 
 that when a trial judge sustains a timely objection to testimony and gives the 
 jury a curative instruction to disregard testimony, any error is deemed to be 
 cured); State v. Patterson,  337 S.C. 215, 226, 522 S.E.2d 845, 
 850-51 (Ct. App. 1999); see also Jackson v. Speed,  
 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997).  Bryant was required to 
 contemporaneously object to the sufficiency of the jury instruction or move 
 for a mistrial to preserve the issue for review.  See State v. McCord, 349 
 S.C. 477, 486, 562 S.E.2d 689, 694 (Ct. App. 2002).  Therefore, we decline 
 to address this issue on appeal.
 II.               
             Juror Disqualification
Bryant argues the trial judge improperly 
 failed to excuse a juror who informed the court during the trial that her children 
 were good friends with Conners stepdaughter.  We find no error.
The determination whether a juror 
 is disqualified is within the discretion of the trial judge and will not be 
 reversed on appeal unless wholly unsupported by the evidence.  State 
 v. Tucker, 320 S.C. 206, 211, 464 S.E.2d 105, 
 108 (1995). 
Section 14-7-1020 of the South Carolina 
 Code (Supp. 2003), explains the duties of a trial judge when a party makes a 
 motion asserting a juror has an interest in the cause of action or has the appearance 
 of bias or prejudice.  This section instructs the trial judge to disqualify 
 the juror if it appears that the juror is not indifferent.  Id.  A juror 
 who is acquainted with a party typically will not be excused when the failure 
 to disclose the relationship is inadvertent and there is an indication that 
 the juror has the ability to be fair and impartial.  See State v. 
 Stone, 350 S.C. 442, 448, 567 S.E.2d 244, 247-48 (2002) (holding removal 
 of a juror acquainted with the defendants aunt was in error when the juror 
 was only casually acquainted with the jurors aunt and the juror indicated to 
 the trial judge her ability to be fair and impartial); Wilson v. Childs, 
 315 S.C. 431, 437, 434 S.E.2d 286, 290 (Ct. App. 1993) (declining to find an 
 abuse of discretion when the trial judge refused to excuse jurors due to relationships 
 with either a party or the partys attorney because the jurors voluntarily disclosed 
 the relationships and stated his or her ability to be impartial).  
In the case at bar, the juror voluntarily 
 disclosed her relationship to Conner and stated her ability to be impartial.  
 The juror notified the trial judge upon her discovery that she knew of Conner 
 and later clarified that she did not know Conner personally but knew his stepdaughter.  
 Despite the statement from Bryants counsel that the juror appeared to be emotional 
 and crying, we could discern no independent indication that this juror was acting 
 in any such manner.  Moreover, on each occasion she was questioned, the juror 
 stated that she felt she could be fair and impartial.  Thus, we find the trial 
 judge did not abuse his discretion in declining to excuse the juror.  
CONCLUSION
We find Bryants issue concerning 
 the admission of Conners biomechanics expert testimony not to be preserved 
 for appeal.  Additionally, we find the trial judge did not err in declining 
 to excuse a juror based on her relationship with Conners stepdaughter.  Accordingly, 
 the decision of the trial court is
AFFIRMED.
HEARN, C.J., HUFF and KITTREDGE, JJ., 
 concur.  

 
 
 [1] The trial judge did not make any specific finding qualifying Conners 
 witness as an expert in biomechanical engineering or accident reconstruction.   
 However, Bryant conceded that the witness was a biomechanical engineer expert.